CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

FEB 2 6 2013

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# United States District Court
## For the Western District of Virginia
### Harrisonburg Division

)
)
)
THOMAS L. SWITZER,                    )
)
*Plaintiff,*          )
v.                                    )
)
)
SHERIFF JOHN THOMAS, *et al,*         )
)
*Defendants.*          )
)
)

Civil No. 5:12cv00056

**REPORT AND
RECOMMENDATION**

By: James G. Welsh
U. S. Magistrate Judge

This matter is before the undersigned pursuant to previously entered orders of referral. (Doc. 5, 17 and 18). Thomas L. Switzer ("Switzer" or "the plaintiff"), is a frequent litigant in this district, and he brings this lawsuit under 42 U.S.C. § 1983 against officials at the Page County (Virginia) Jail alleging that those officials subjected him to cruel and unusual punishment in violation of the Eighth Amendment. (Doc. 3). He also alleges that a jail nurse violated the privacy requirements of the Health Insurance Portability and Accountability Act ("HIPAA") by disclosing Switzer's private medical information to other jail personnel and inmates.

In response the defendants have moved to dismiss Switzer's complaint for failure to state a claim on which this court can grant him relief (Doc. 9) and further moved for entry of an order requiring pre-filing review (Doc. 11 and 40). A show cause order (Doc. 49) was thereafter entered on September 20, 2012 providing the plaintiff with notice and a reasonable opportunity

to respond to the defendants' motion seeking a system of pre-filing review. *See Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3<sup>d</sup> 812, 819 (4th Cir. 2004) ("before a judge issues a pre-filing injunction under 28 U.S.C. § 1651(a), even a narrowly tailored one, he must afford a litigant notice and an opportunity to be heard."); F.R.C.P 11(c)(1).

## I. SUMMARY and RECOMMENDED DISPOSITION

After a careful and mature consideration of the entire record and after having heard the views of the parties, including the plaintiff's views given in response to his opportunity to explain why the court should not impose on him a pre-filing review system on all future *pro se* filings, for the reasons discussed herein in detail, including specifically the fact Switzer's well-pleaded facts do not support a plausible inference that any of the defendants was deliberately indifferent to a substantial risk of serious harm to Switzer and the fact HIPAA does not provide for a private right of action, it is **RECOMMENDED** that the defendants' Rule 12(b)(6) motion to dismiss be **GRANTED;** that the facts and circumstances justify entry of a **PRE-FILING INJUNCTION** under 28 U.S.C. § 1651(a) subjecting future filings by Switzer to a system of pre-filing review; that both the plaintiff's motions for summary judgment and for leave to file an amended complaint be **DENIED;** that this case be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND;** and that it be **STRICKEN** from the court's active docket.

## II. DEFENDANTS' MOTION TO DISMISS

### A. The Allegations and the Standards of Review

2

In his "Amended Verified Civil Complaint," the plaintiff names John Thomas (Sheriff of Page County, Virginia) as a defendant in the style of the case; however, Sheriff Thomas is nowhere mentioned in the body of the complaint. In comparison, not named in the style of the case, but named in the body of this pleading, are deputy sheriffs Gordon Crosen, Mike Atkins (Capt.), Bruce Wright (Lt.), Donald Durroughs, Jason Alshire, "Lt. Kite (retired)," and jail nurse Annette Weaver. Collectively, they are herein identified as the "defendants." None is alleged to have acted other than in his or her official capacity. And in response to the plaintiff's complaint, they have jointly and severally moved for its dismissal pursuant to Rule 12(b)(6). (Doc, 9).

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3$^d$ 231, 243 (4th Cir. 1999). And as more recently clarified by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Rule 8 standard applicable to Rule 12(b)(6) motions "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting F.R.Civ.P. 8(a)(2)). In other words, this showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

In deciding a motion to dismiss, the court's first obligation, therefore, is to review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 663. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. At 664. In making this assessment, the court is obliged to construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3$^d$ 776,

3

783 (4th Cir. 1999); however the court is not required to accept unsupported legal allegations, *Revene v. Charles County Commissioners*, 882 F. 2[d] 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286(1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2[d] 844, 847 (4th Cir. 1979).

Consistent with this standard of review and read liberally, the plaintiff's complaint can be best described as a disjointed litany of perceived slights, grievances and jail staff "indifference" stemming from his several short term incarcerations in the Page County Jail during parts of 2011 and 2012. His complaints range from alleged HIPAA[1] violations to a complaint of general overcrowding, and they include allegations of sub-standard medical care, "being urinated on" by a fellow inmate, being "severely beaten" by another fellow inmate, being "cursed and spat upon" by fellow inmates, being "sexually abused" by an inmate "shaking his penis in [the plaintiff's] face," being unable to make telephone calls other than at night because he could not be safely housed with other inmates, being the victim of "incidents" of verbal and emotional abuse by fellow inmates and jail staff, being "locked in a 'drunk tank'" in connection with efforts to treat his myriad of "chronic medical conditions," being told by two members of the staff that the jail "[was] not the Holiday Inn," and being told by another staff member that the plaintiff's medical care complaints "left a bad taste in his mouth" and that he was not going to be transferred to a medical facility because of the added cost.

## B. No Claim Stated Against Sheriff Thomas

---

[1] Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

4

To the extent the plaintiff is seeking to hold Sheriff Thomas liable in his supervisory capacity, Switzer has failed to state a claim. Under § 1983, liability is personal in nature, and the doctrine of *respondeat superior* does not apply. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2[d] 926, 928 (4th Cir. 1977). There are, therefore, only two cognizable bases upon which Sheriff Thomas could be held liable for some alleged violation of Switzer's constitutional rights. He must have been either personally involved in some culpable act or it must have occurred pursuant to some official policy or custom for which he was responsible. *Fisher v. Washington Metro, Area Transit Auth.*, 690 F.2[d]1133, 1142-43 (4th Cir. 1982); *see Monell*, 436 U.S. at 704; *Vinnedge*, 550 F.2[d] at 928. No such claim is alleged in the plaintiff's complaint. Not only is such responsibility not alleged, but Sheriff Thomas' name is not even mentioned in the body of the plaintiff's complaint. Switzer has simply presented no evidence or even a cognizable suggestion in his complaint or in his plethora of pleadings in this case or in his argument to indicate that Sheriff Thomas participated in any denial of medical care or other wrongful act. Likewise, he points to no evidence or cognizable suggestion that the Sheriff had some policy to deny medical care or engage in some other wrongful act. Accordingly, there is no evidence that Sheriff Thomas violated Switzer's constitutional rights, and his motion to dismiss is well-taken.

### C. No Claim Stated Against Nurse Weaver

Switzer's claim against the jail nurse (Annette Weaver) is equally baseless. His sole allegation against her is that she failed to protect his HIPAA rights by discussing his "private medical matters" in the presence of other jail personnel "and one time … in the presence of several inmates." Since HIPAA creates no private cause of action and since there is no

fundamental right of privacy in personal medical information, no cognizable cause of action has been stated against Nurse Weaver. *See Acara v. Banks*,470 F.3[d] 569, 571 (5th Cir. 2006) (held that HIPAA creates no private cause of action); *Scott v. Blue Ridge Reg'l Jail Auth.*, 2006 U.S, Dist. LEXIS 51387, *5 (WDVa. Jul. 27, 2006) ("there is no general fundamental right to privacy in personal medical information … even if [the prisoner's] medical history was relayed to other parties by jail personnel") (citations omitted). Therefore, Switzer's claim against Nurse Weaver fails to raise a claim of constitutional magnitude, and her motion to dismiss is also well-taken.

### D. No "Failure to Protect" Claim Stated

Although the Eighth Amendment prohibits the infliction of "cruel and unusual punishment, only certain conditions of confinement are cognizable. Prison conditions may be "restrictive and even harsh." Rhodes v. Chapman, 452 U.S. 337. 347 (1981). However, if the conditions of confinement cause pain to be unnecessarily and wantonly inflicted, such conditions may constitute cruel and unusual punishment under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). For example, "being violently assaulted in prison is … not 'part of the penalty that criminal offenders pay for their offenses against society,'" and is actionable under § 1983. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes*, 452 U.S. at 347). Consistent with this constitutional protection, prisons have a duty to take reasonable steps to protect inmates from violence by other inmates. *Id.* at 837.

Therefore, to state a cognizable "failure to protect" claim the prisoner (in this case the plaintiff) must show that (1) he was "incarcerated under conditions posing a substantial risk of serious harm" and (2) that the official was deliberately indifferent to the inmate's health or safety.

6

*Id.* at 822; *see also Wilson v. Seiter*, 501 U.S. 294, 305 (1991) (holding the deliberate indifference standard to be the appropriate standard in cases involving conditions of confinement); *Price v. Sasser*, 65 F.3$^d$ 342, 345 (4th Cir. 1995); *Pressly v. Hutto*, 816 F.2$^d$ 977, 979 (4th Cir. 1987).

In other words, the Eighth Amendment "protects a convicted inmate from physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to specific known risks of harm." *Pressly*, 816 F.2$^d$ at 979. To meet this "deliberate indifference" standard a prisoner is required to show that an official knew of and disregarded an excessive risk to his health or safety, *Farmer*, 511 U.S. at 837-838, and mere negligent conduct of prison officials is not enough. *Id.* at 838; *Wilson*, 501 U.S. at 305; Price, 65 F.3$^d$ at 345. Furthermore, even if a prison official fails to alleviate a significant risk of harm to an inmate because of a failure to perceive it, the Eighth Amendment is not violated. *Farmer*, 511 U.S. at 838.

The "neglect" on the part of deputies Crosen, Adkins and Wright and the jail environment "conducive to confrontation" may have resulted, as Switzer alleges, in his being urinated-on by a fellow inmate during "[his] stay in [the] Fall of 2011" and his being subjected to a "severe[] beating" by another inmate "toward the end of February 2012" during a later incarceration. However, these allegations fail to state a cognizable claim. At most Switzer's claim of deliberate indifference to his safety is based either on a single incident, or possibly two isolated unrelated incidents, that occurred in the absence of any documentation of widespread abuses, in the absence of any continuing supervisor inaction, and in the absence of any tacit

7

authorization of subordinates. Without such evidence, Switzer's complaint is insufficient to state a deliberate indifference claim. *Slakan v. Porter*, 737 F.2$^d$ 368, 372-373 (4th Cir. 1984) (relying on *Orpiano v. Johnson*, 632 F.2$^d$ 1096, 1101 (4th Cir. 1980).

Furthermore, the urination incident during an earlier incarceration does not make the plaintiff so obviously vulnerable as to require special protection. And as Switzer's complaint makes clear, once his attacker was identified, he was moved and the attacker was criminally prosecuted. These alleged facts effectively negate any suggestion that the defendants, or any one or more of them, were deliberately indifferent to Switzer's safety. The absence of a cognizable deliberate indifference is also evident by Switzer's failure to allege that any of the defendants were responsible for his general population placement at the time if the attack. *See Martin v. Chesapeake Circuit Court*, 1997 U.S. Dist. LEXIS 12274, *10 (EDVa. June 19, 1997).

### E. No "Deliberate Indifference" to a Serious Medical Need

To state an Eighth Amendment claim that jail personnel were deliberately indifferent to his medical needs, a complaint must contain sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To have such "facial plausibility," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Such allegations "[do not need to be] exhaustive, 'detailed factual allegations,' but [Rule 8] demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

8

To meet minimally this pleading requirement, the plaintiff must show that a defendant was personally aware of facts indicating a substantial risk of serious harm, recognized the existence of such risk, and acted with deliberate indifference (either with actual intent or reckless disregard) to the serious medical need. *E.g., Estelle v. Gamble* 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 838 (1994); *Miltier v. Beorn*, 896 F.2$^d$ 848, 851 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard.); *Parrish ex rel Lee v. Cleveland*, 372 F.3$^d$ 294, 303 (4th Cir. 2004) ("evidence must show that the official in question subjectively recognized that his actions were inappropriate in light of that risk") (internal quotation marks and citation omitted).

In the case now before the court Switzer's disjointed medical care allegations range from Capt. Atkins "imply[ing] the he did not need a machine to assist with sleeping to being ordered to use the machine, from deputies being "put in a position where they had to diagnose and treat illness" to "check[ing] his blood pressure" and monitor[ing] his glucose," and from "assist[ing] him] in administering [his] insulin) to telling him that he was not going to be sent to a medical facility because it was too expensive. In short, the complaint is completely devoid of any allegation or suggestion that any individual defendant withheld any specific and necessary medical treatment for a serious medical need. *See Estelle v. Gamble,* 429 U.S. at 106. Instead, Switzer asserts only subjective, vague and largely implausible claims that his medical needs were not being attended-to in a manner he deemed to be appropriate. Even if it is assumed *arguendo* that he had a serious medical condition, Switzer's complaint presents no factual predicate to suggest that any defendant was subjectively reckless with regard to that condition. Therefore this claim too should be dismissed.

9

## F. No Other Eighth Amendment Claim Stated

Similarly without merit is the plaintiff's other claim that other of his Eighth Amendment rights were violated. For example, his being subjected to "insults" by fellow inmates and by various defendants without more does not rise to the level of a constitutional violation. *Binns v. Clark*, 2012 U.S. Dist. LEXIS 57618, *10-11 (WDVa. Apr. 25, 2012) (a defendant's "comments that may constitute verbal abuse or harassment [standing] alone do not rise to the level of an Eighth Amendment violation") (citations omitted). Likewise, his being "subjected to overcrowding" resulting his being "forced," along with "several" other inmates, from time to time to sleep "on mats on the floor" does not present an Eighth Amendment claim based on dangerous jail overcrowding or long-standing sanitation problems. *See Brown v. Mitchell*, 327 F. Supp. $2^d$ 615, 623 (EDVa. 2004). Switzer's "overcrowding" assertion similarly falls far short of any other "extreme deprivation" cognizable under the Eighth Amendment. *See e.g., Binns* at *6-7 ("to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both ... 'a serious deprivation of a basic human need and ... deliberate indifference to that prison condition'").

In summary and succinctly put, each and every one of the plaintiff's claims of some failure to protect, failure to treat, lack of due care for his interests and safety, or other denial of some constitutional protection fails to state a cognizable Eighth Amendment cause of action. *See Moore v. Winebrenner*, 927 F.2$^d$ 1312, 1316 (4th Cir. 1991) (holding a prison warden not liable for an inmate stabbing resulting from a failure to intervene due to inadequate staffing); *Whitley*, 475 U.S. at 319) (mere lack of due care for a prisoner's interests and safety fails to state an Eighth Amendment claim).

10

### G. No Equal Protection Claim

To state a claim for an Equal Protection Clause violation, Switzer must, at the very least, allege that the defendants treated him differently from similarly situated individuals. *United States v. Armstrong*, 517 U.S. 456, 458 (1996). He has not done so; therefore, his equal protection claim fails.

### H. Complaint Fails Generally to Meet Minimum Pleading Requirements

In support of their Rule 12(b)(6) motion the defendants also next argue that Switzer's complaint is an improper effort to assert a legally inadequate "cumulative" § 1983 claim. Citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 513 (2001), they argue that at a minimum Switzer's complaint must be a short and plain statement of his claim, which must show both that he is entitled to relief and gives each defendant fair notice of what he claims are the grounds upon which it rests. The merit in this argument is obvious on review. It is patently obvious from a reading of the complaint that it fails to give fair notice of the plaintiff's specific claim against each defendant, and it similarly fails even minimally to apprise each defendants of who did what to whom and when. Thus, the complaint clearly fails to meet even minimal Rule 8 pleading requirements. *Miller v. Carolinas Healthcare Sys.*, 2012 U.S. Dist. LEXIS 167242, *1-2 (WDNC. Nov. 26, 2012)

### I. Leave to Amend Would Be a Futile Exercise

Although *pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys, the court under no circumstance is required to accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.

11

*GMC v. New A.C. Chevrolet*, 263 F.3d 296, 333 (3rd Cir. 2001) ("While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions.") (internal quotation marks, citations, and footnotes omitted). Consistent with these principles, a *pro se* litigant, such as the plaintiff, should be granted leave to file a curative amended complaint, unless such an amendment would be either inequitable or futile. *See Bennett v. Equitable Trust Mortg. Corp.*, 2010 U.S. Dist. LEXIS 5013, *9 (NDWVa. Jan. 22, 2010) ("although Rule 15(a)(2) states that '[t]he court should freely give leave [to amend the pleading] when justice so requires, a district court may deny a request to amend if, *inter alia*, the amendment would be futile") (citing *Marsh v. W.R. Grace & Co.*, 80 Fed.Appx. 883, 888 (4<sup>th</sup>Cir. 2003)).

As the defendants noted in their response (Doc. 29, p2) to Switzer's request to file an amended complaint, he has been long aware of the fact that "he may only [amend] with the courts leave or the opposing party's written consent." *Switzer v. Town of Stanley*, 2011 U.S. Dist. LEXIS 111652, *4-5 (WDVA. Sept 28, 2011) (Urbanski, J.). As the defendants have further noted in the same response, many of the allegations in the instant suit replicate allegations made by the plaintiff in this earlier suit. In both Sheriff Thomas was named defendant; in both Switzer has sought to assert a civil rights claim on the basis of his placement in segregation for medical reasons; in both he has asserted claims based on incidents of verbal abuse by fellow inmates and staff; in both he alleges purported substandard medical care, and in both he claims to be the victim of jail mismanagement. *Id.* at 1-3.

The plaintiff's complaint is not only a collection largely of conclusory allegations devoid of relevant factual statements, but it falls far short of stating any cognizable constitutional claim. A full and fair consideration of the views of the parties and the pleadings and papers filed herein, including *inter alia* Switzer's Motion for Summary Judgment (Doc. 16), Brief in Opposition (Doc. 19), Motion for Bill of Particulars (Doc. 25), Motion for Leave to File Amended Complaint (Doc. 26),Motion to Certify a Class (Doc. 27), Motion for Sanctions (Doc. 28), Renewed Motion to Strike and for Sanctions (Doc. 41), Motion to Amend (Doc. 42), and Motion for Discovery (Doc. 44), affirmatively demonstrate that Switzer has no right to recover. He has failed utterly and completely to present any argument or evidence that would lead the court to believe any amendment to his complaint would cure any of its multitudinous deficiencies or would be anything other than an exercise in futility. [2] This matter, therefore, should be dismissed without leave to amend. *See Grayson v. Mayview State Hospital*, 293 F.3[d] 103, 106 (3rd Cir. 2002).

## III. PLAINTIFF'S MOTIONS

### A. Non-dispositive Motions that Do Not Seek Sanctions or Recusal

Excluding motions seeking only sanctions against opposing counsel or recusal of the undersigned, also now before the court for consideration are fifteen separate non-dispositive motions and a motion for summary judgment filed by the plaintiff. These include motions "for a preliminary injunction" (Doc. 4), "for summary judgment" (Doc. 16), "for sanctions" (Doc. 24),

---

[2]  Several appellate courts have found that the failure to provide a draft amended pleading is an adequate basis for a district to deny a request for leave to file an amended pleading. *See e.g., Lake v. Arnold*, 232 F.3[d] 360, 374 (3rd Cir. 2000);*see also Harris v. City of Auburn*, 27 F.3[d] 1284, 1287 (7th Cir. 1994) (the failure to provide a proposed amended complaint demonstrates lack of diligence or bad faith). Herein, Switzer has failed to provide such a draft for court review, and this failure provides an additional basis for denying leave to file an amended complaint.

"for a bill of particulars" (Doc. 25), "for leave to file an amended complaint and for sanctions" (Doc. 26), "[for certification of] class and appoint[ment of] class counsel" (Doc. 27), for leave to file an "amended motion to strike and for sanctions" (Doc 28), for a "renewed motion to strike and for sanctions" (Doc. 41), for "the court to amend its order for a more definite statement" (Doc. 42), "for a jury trial" (Doc. 43), for the court to amend its order staying discovery (Doc. 44), to strike defendants' pre-filing review motion (Doc. 47), to vacate show cause order (Doc. 50), for "disqualification of counsel" (Doc. 51), "for a conference" (Doc. 58), and "for a scheduling order" (Doc. 59).

After reading and considering each of these submissions, one is compelled to note that several are incomprehensible; several are patently inapposite; several are untimely or premature given the fact that the parties are not at issue, and several are unwarranted by existing law or the applicable Federal Rules of Civil Procedure. Therefore, by separate Order Switzer's non-dispositive motions for a preliminary injunction (Doc. 4), for a bill of particulars (Doc. 25), for certification of class and appointment of class counsel (Doc. 27), amending motion to strike (Doc. 28), renewed motion to strike (Doc. 41), for amended order for a more definite statement (Doc. 42), for a jury trial (Doc. 43), for an amended order staying discovery (Doc. 44), to strike defendants' pre-filing review motion (Doc. 47), for a conference (Doc. 58), and for a new scheduling order (Doc. 59) will be DENIED.

### B. Motions for Sanctions

Switzer's multiple motions for Rule 11 sanctions (Doc. 24, 26, 28, 41 and 51) are patently unwarranted, improper, designed to vex and harass opposing counsel, and to increase

14

needlessly the cost of litigation. *See* Rule 11, F.R.Civ.P. None is based on any good faith argument; none is based on any reasonable belief formed after a reasonable inquiry or otherwise complies with Rule 11(b), and none is filed pursuant to any attempt at compliance with the pre-filing requirements of Rule 11(c). Therefore, each motion or demand for "sanctions" filed by Spitzer is found to be meritless and vexatious, and it too will be DENIED.

### C. Motion to Recuse

Switzer's plethora of motions also includes one seeking recusal of the undersigned "for violating the rules of Judicial Ethics because he is advocating the position of past, current, and future defendants." (Doc. 52). This conclusory assertion by Switzer suggests no "personal bias or prejudice concerning him, any other party, or any personal knowledge of disputed evidentiary facts concerning the proceeding. 28 U.S.C. § 455(b)(1). This recusal effort is unsupported by any "timely or sufficient affidavit indicating that the undersigned has some personal bias or prejudice either against him or in favor of any adverse party." 28 U.S.C. § 144; *see Sine v. Local 992 International Brotherhood of teamsters*, 882 F.2nd 913, 914 (4th Cir. 2003) (the nature of the bias must be personal rather than judicial) (citing *Shaw v. Martin*, 773 F.2$^{d}$ 304, 308 (4th Cir. 1984)). It contains no facts suggesting any "knowledge of the relevant facts [which] might reasonably question the [undersigned's] impartiality." *United States v. Cherry*, 330 F.3$^{d}$ 658, 665 (4$^{th}$Cir. 2003); *Belue v. Leventhal*, 640 F.3$^{d}$567, 575 (4th Cir. 2011) ("Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.") (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). The undersigned, therefore concludes that Switzer has neither shown nor has he alleged a personal bias from an extra-judicial source, as required under 28

15

U.S.C. § 144, [3]  In short, Switzer points to nothing outside of court rulings as support for his claim of bias.  Recusal is not warranted under 28 U.S.C. § 455, and Switzer's motion seeking recusal will also be DENIED.


## IV.  DEFENDANTS' MOTION FOR ENTRY OF PRE-FILING INJUNCTION


Because Switzer's litigation history is directly relevant as to whether a pre-filing injunction is appropriate, that litigation history both in the state and federal courts merits review in detail.

### A.  Switzer's Litigation History

### 1.  State Court [4]

Much of Switzer's *pro se* litigation experience revolves around his more than decade-long effort to reverse a custody and visitation decision initially made on a temporary basis by the Augusta County (Virginia) Juvenile & Domestic Relations ("J&DR") Court and subsequently made permanent by order of the Circuit Court of Augusta County (Virginia) (Chancery no. CH99000179) entered March 7, 2000.  Therein, custody of Switzer's infant biological child was awarded to the child's maternal grandparents, and Switzer was granted limited supervised visitation.  *See Switzer v. Switzer*, 273 Va. 326, 329, 641 S.E.2d 80, 81 (2007).  Despite Switzer having waged this long-running, multi-front war against this custody order at all four levels of the Virginia state judiciary and in this district on several additional occasions, custody and

---

[3]  Although the undersigned has had occasion in the past to rule on various motions filed by Switzer in this or another case, nothing in those rulings was the result of any personal bias or partiality against him, and to the extent any significant orders were appealed, they have been affirmed to the best of the undersigned's knowledge.

[4]  Much of Switzer's quarrelsome state court litigation history is taken from a chronology included in a twenty-one page letter opinion of the presiding trial court judge in the Augusta County (Virginia) Circuit Court, dated 10/04/2010 in which the plaintiff's more than decade-long litigation history in five consolidated cases is recounted and summarized.

16

visitation has remained essentially unchanged until an order was entered on July 24, 2012 by the J&DR court terminating Switzer's visitation and granting very restrictive visitation to the child's paternal grandparents.

The frivolous and veracious nature of this long-running effort by Switzer began with his premature initial appeal of the, then still pending, temporary custody and visitation order. To open a second front, he also filed a CHINS (Child in Need of Services) petition in the J&DR court for the City of Staunton (Virginia). *See Switzer v. Switzer*, 273 Va. at 329, 641 S.E.2[d] at 81. After this petition was dismissed by the J&DR, Switzer appealed to the state circuit court, and after the J&DR court dismissal was affirmed, Switzer appealed, this time to the Virginia Court of Appeals. In addition to affirming the dismissal of his petition, the state Court of Appeals found that Switzer's arguments "were not made in good faith and that the appeal was filed" to harass, cause unnecessary delay, and cause a needless increase in the cost of litigation. *Id.* When Switzer failed to pay this sanction, the Court of Appeals entered a follow-up order on May 8, 2003 barring him from filing any further appeals until he paid. *Switzer v, Switzer*, 273 Va. at 329, 641 S.E. 2[d] at 81-82.

Undeterred, two months later Switzer filed motions seeking to amend or vacate the custody and visitation order. It too was dismissed by the J&DR court, and Switzer appealed to the circuit court. Once again Switzer's effort to overturn the custody order was dismissed, but not before it was once again noted that his petitions were "not warranted by existing law or a good faith argument" and were "filed for an improper purpose, that is to harass the defendants and needlessly increase their costs." *Id.* (internal quotations omitted). Still undiscouraged,

17

Switzer appealed to the Virginia Court of Appeals. On the basis of his unpaid sanctions judgment, this appeal was dismissed, along with a separate appeal by Switzer in which he sought to overturn a divorce decree that had been granted to his former wife. Still undeterred, Switzer appealed, to the Virginia Supreme Court. Although the state supreme court dismissed Switzer's appeal, it concluded that the sanctions order had not been narrowly tailored and, therefore, vacated and remanded the appeals court order. *Switzer v. Switzer*, 273 Va. at 333, 641 S.E.2[d] at 84.

This procedural victory by the plaintiff proved to be short-lived. On remand, his appeal was dismissed on other grounds; however, it appears that Switzer was emboldened and embarked on a new campaign against the custody order. On October 1, 2007, Switzer's current wife filed a petition in the J&DR court seeking to re-open the custody issue. After her petition was dismissed, she appealed to the state circuit court. *See* attachment "A" (Augusta County Cir. Ct. (Case nos. CJ100002,-08,-54.-55,-56, and -57) (*consolidated*). As the presiding judge later observed in a twenty-page letter opinion, "[f]rom that instant, the case took on a life of its own." *Id.* at 3. Ignoring the fact that Switzer's wife was the only appellant, Switzer began filing a profusion of documents and motions unrelated to visitation (the only issue on appeal), and and he initiated an effort to obtain a change in the child's custody. *Id.*

By the state court's count, between November 2007 and August 2009, Switzer filed six praecipes, fifty motions, nine petitions, and three other papers with various levels of the Virginia court system in matters relating to custody and visitation. During this time, he also undertook

18

eighteen assorted state court appeals, which were determined in nearly every instance to be frivolous, vexatious, or both. *Id.* at 3-6.

Between May and June of 2010, Switzer filed four motions in the state circuit court to compel discovery from various parties in the litigation. *Id.* at 7-10. And when the recipients did not respond as fast as he wanted, Switzer filed motions asking the court to hold them in contempt. *Id.* Similarly, during the preceding January, he filed three separate motions asking the J&DR court to order the custodial grandparents and another to show cause why they should not be held in contempt for violating various court orders and committing perjury. When the court dismissed these motions, Switzer appealed to the circuit court. And during that appeal, he separately initiated a proceeding seeking entry of a separate show cause order against the custodial grandparents.

Switzer's vexatiousness and disdain for others involved the state court litigation is similarly evident in other pleadings he filed. In one pleading, for example, he suggested that the grandparents, school officials, attorneys and a judge involved in the cases should be investigated for perjury, conspiracy, treason, and obstructing the administration of justice. *Id.* In another, he suggested that the judges involved in his case should be impeached and the attorneys summarily disbarred. *Id.* Also evidencing this vexatiousness and distain for others, the state court record shows that Switzer filed a complaint with the Virginia State Bar against an attorney for an opposing party, and then moved to have that party disqualified and that he had earlier sought to have the child's guardian *ad litem* disqualified.

19

During this time, Switzer's distain and contempt for the Virginia courts was also evident. For example, he filed at least three motions in cases that were on appeal. *See Id.* He twice asked the circuit court for expedited consideration of his motions, and he even filed a mandamus with the Virginia Supreme Court asking it to compel the circuit court judge to enter an order disposing of his case. *Id.* at 1, 5.

Not surprisingly, by October 2010 the presiding circuit court judge had grown impatient with this, by then, decade-old conflict. He enjoined Switzer from filing any more papers concerning custody or visitation without first obtaining leave of the court. In his October 4, 2010 letter opinion, he found that Switzer had abused the judicial system by asserting meritless claims, "assiduously declined to address the substantive factual issues in the case," caused the court to spend valuable and limited resources entertaining his frivolous litigation, harassed the other parties in the case simply by causing them to participate, caused needless expense and anxiety to others on matters which have been addressed and resolved by the Virginia courts, and "engaged in a Quixotic attack on the law of the case." *Id.* at 16. Quoting George Bernard Shaw, the state circuit judge further opined, "never wrestle with a pig; you get dirty, and the pig enjoys it," and while "[he was] not, by any means, suggesting that Switzer [was] a pig, … it is the case that he has demonstrated a gluttonous appetite for litigation," that he "deems the judicial arena a forum to demonstrate his legal acumen," and that he "[has derived] far more satisfaction from litigating settled issues than can be justified by the unwarranted diversion of judicial resources that his repetitive claims demand." *Id.* at 17. As the state appeals court observed in its affirmance of the trial judge's order, the injunction has not prevented Switzer from litigating other matters in state court. Indeed, documents attached as an exhibit to the defendants' motion seeking a pre-filing

20

injunction indicate that Switzer has filed at least three lawsuits in the Circuit Court of Page County (Virginia) since April, 2012 (Doc. 40, exhibits A-C).

## 2. Federal Court

With this history of litigiousness in the state judicial system, it is not surprising that Switzer's appetite for litigation also led him to federal pastures on multiple occasions. Since 2000, Switzer has been permitted to file some fifteen *pro se* proceeding in this court, each *in forma pauperis*, and he has moved to intervene in another. More often than not, he has used these *in forma pauperis* filings to seek declaratory, injunctive and/or monetary relief for unfounded and unsubstantiatable violations of his constitutional rights under 42 U.S.C. § 1983.

The list of his unfounded federal court filings include: *Switzer v. Commonwealth of Virginia, et al.,* 5:00cv00012 (civil rights; no claim stated; no jurisdictional basis; collateral relief barred by Rooker-Feldman doctrine); *Switzer v. Filson,* 5:01cv00071 (civil rights; "a repackage of his earlier complaint;" no jurisdictional basis for suit against state J&DR judge; collateral relief barred by Rooker-Feldman doctrine); *Switzer v. Garst,* 5:04cv00064 (civil rights; "frivolous" claims against Commonwealth Attorney regarding a state law anti-stalking prosecution; *in forma pauperis* filing denied); *Leist v. Commonwealth of Virginia, et al.,* 4:04cv00069 (effort to intervene as additional *pro se* plaintiff in matter involving alleged federal law violations of Virginia child custody proceedings; relief barred by Rooker-Feldman doctrine); *Switzer v. Smith, et al.* 5:09cv00013 (civil rights; third child custody dispute challenge; relief barred by Rooker-Feldman doctrine); *Switzer v. Hennessy,* 5:09cv00091 (civil rights; "a substantial list of legal reasons," including Rooker-Feldman, required dismissal of this

"impermissible collateral attack on state court proceedings and judgments"); *Switzer v. Town of Stanley, et al.*, 5:10cv00096 (civil rights; failed "to state a claim for relief that is plausible on its face"); *Switzer v. Town of Stanley, et al.*, 5:10cv00128 (civil rights; although complaint "added some facts ..., [no] plausible claim for relief" stated); *Switzer v. Bosserman*, 5:11cv00002 (civil rights; claim against clerk of court, "amounts to nothing more than a challenge" to state court custody judgment; relief barred by Rooker-Feldman doctrine); *Switzer v. Town of Stanley, et al*, 5:11cv00021 (civil rights; effort to use civil tort action to "challenge the validity" of criminal conviction). [5] *See also Switzer v. Credit Acceptance Corp.*, 5:08cv00071 (effort to avoid binding arbitration and later to seek a reopening and vacation of the arbitration result; no federal court jurisdiction); *Switzer v. Credit Acceptance Corp.*, 5:09cv00042 (renewed effort by Switzer *et ux* to have arbitration result vacated and for damages under 15 U.S.C. §§ 1692 *et seq.*

### 3. Abusive Motions Practice

A recent example of the plaintiff's proclivity to engage in an abusive motions practice is demonstrably evident from both the sheer number he has filed in the instant case and also from their nature and apparent purpose. Another recent example of this proclivity is evident from the torrent of thirty, mostly frivolous motions filed between July 18 and September 25, 2012 in the three lawsuits [6] Switzer had pending at the time of the undersigned's filing of the report commending dismissal of the remaining defendant in 5:11cv00021. The filings included three motions to certify a class; a motion for a Bill of Particulars in a case in which the defendants had

---

[5] Seven unwarranted and uncalled-for motions were filed by Switzer after the Court granted summary judgment to Sgt. Dean (5:11cv00021 Doc. 101, 104, 110, 115, 117), the last three of which Switzer filed after filing his Notice of Appeal (Doc. 108).

[6] *Switzer v. Town of Stanley, et al* (civil no. 5:11cv00011); *Switzer v. Weaver, et al* (civil no. 5:12cv00056); and *Switzer v. Thomas, et al* (civil no. 5:12cv00057).

22

not actually filed an answer; five motions to strike various pleadings, motions and exhibits filed by opposing parties; four motions in seeking amend a previously submitted pleading; and six motions in which Switzer asked the court either to reconsider a prior decision, grant him rehearing on matters already heard, or revise or vacate an order.

Just as he did in connection with his state court litigation, Switzer has continued in this court to attack the professionalism of opposing lawyers and the impartiality of presiding judges. The day before the undersigned issued his report recommending dismissing Switzer's suit against the remaining defendant in case no. 5:11cv00021, Switzer filed his own motion for summary judgment, in which he gratuitously included a request for sanctions against opposing counsel for filing what he asserted to be frivolous motions. (5:11cv00021, Doc. 91). A little over a week later (after receiving the recommendation of dismissal, Switzer again moved for sanctions and "renewed" his summary judgment motion. *Id.* (Doc. 94). [7]

As previously discussed, the extent and brazenness of Switzer's abusive use of motions is also evident by his repeated requests for the imposition sanctions against opposing counsel and/or counsel's disqualification, his gratuitous failure to make any effort to comply with Rule 11, and basing a recusal motion solely on the basis of prior judicial rulings.

### B. Consideration of Pre-filing Injunction Factors

In response to the defendants' motion seeking entry of a pre-filing injunction (Doc. 11, 40) and on the basis of Switzer's above-outlined long history of filing frivolous lawsuits along with voluminous extraneous motions and documents, an order was entered (Doc. 49) for Switzer

---

[7] The presiding district judge treated this filing as Switzer's objections to the R&R

to show cause why he should not be required to obtain pre-filing review before filing any further *pro se* lawsuits. The show cause hearing was held as scheduled on October 11, 2012. (Doc. 54-55). The plaintiff was present; he was apprised of the possibility of a pre-filing injunction and the basis therefore, and he was given the opportunity to address the merits of the motion or otherwise oppose imposition of a pre-filing injunction. (Doc. 51, 53, 55) *See Field v. GMAC LLC*, 2009 U.S. Dist. LEXIS 127533. *8 (EDVa. Jan 30, 2009) ("before a judge issues a pre-filing injunction under 28 U.S.C. § 1651 (a), even a narrowly tailored one, he must afford a litigant notice and an opportunity to be heard.").

Given the settled principle that a pre-filing injunction should not limit access to the courts absent "exigent circumstances," [8] the use of such a measure against a *pro se* plaintiff should be approached "with particular caution" and should be "the exception to the general rule of free access to the courts." *T.W. v. Hanover County Pub. Sch.*, 2012 U.S. Dist. LEXIS 157813, *8 (EDVa. Nov. 2, 2012) (citation and internal quotation marks omitted). The courts, however "have the constitutional obligation and the inherent power to protect against conduct that impairs the court's ability to conduct their functions," … and [t]he All Writs Act, 28 U.S.C. § 1651(a), "grants federal courts the authority to limit access to the court by vexatious and repetitive litigants." *Id.* (quoting *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3$^d$ 812, 818-819 (4th Cir. 2004).

The factors, therefore, to be considered in evaluating whether to issue a pre-filing injunction are: (1) the party's history of litigation, particularly whether he has filed vexatious,

---

[8] *Inter alia*, such "exigent circumstances" have been found to include a litigant's continued abuse of the judicial process by filing meritless and repetitive actions." *Cromer*, 39 F.2$^d$ at 817-818.

24

harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the court and other parties as a result of the party's filings; and (4) the adequacy of alternative sanctions. *Cromer*, 390 F.3[d] at 818 (citing *Safir v. United States Lines, Inc.*, 792 F.2[d] 19, 24 (2nd Cir. 1986)).  Although the court is obligated to weigh all of the relevant circumstances' "[u]ltimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Whitehead v. Paramount Pictures Corp.*, 2009 U.S. Dist. LEXIS 44259, \*9 (EDVa. May 26, 2009) (citing *Safir*, 792 F.2[d] at 24).

Based on a review of the entire record, it is patently evident that in this case such *exigent circumstances* justify entry of a pre-filing injunction.  Switzer has engaged in a pattern of continuous abuse of the judicial process for well over a decade.  He has filed meritless and repetitious lawsuits, motions, and accompanying documents.  He has filed a dozen or more lawsuits in this district alone asserting a mishmash of claims against various public employees, some multiple times despite having had essentially identical claims dismissed in previous lawsuits. All of his lawsuits and filings basically recite similar perceived grievances against public officials, simply organized in a different incoherent manner. This litigation history, including both the nature and content of his motions and his proclivity to refile nearly identical actions naming the similar parties and recasting identical claims, demonstrates clearly an absence of any objective good faith or rational belief in the merits of his claims.

Most telling of all, consideration of the *Cromer* factors weighs heavily and compellingly in favor of imposing a narrowly tailored pre-filing injunction against Switzer.  His long history

25

of frivolous and vexatious litigation is obvious. His frivolous motion practice and baseless attacks of opposing counsel and litigants is difficult to explain other than a conscious attempt on his part to harass his opponents and thwart the judicial process. His effort in the instant case, as well as in other cases, to relitigate matters earlier decided against him strongly suggests both the lack of any good faith litigation basis in this case, and proclivity on his part to conduct litigation in bad faith. *See Miles v. Angelone*, 483 F. Supp. $2^d$ 491, 496 (EDVa. 2007) (finding "no discernible good-faith basis" for petitioner's repeated attempts to relitigate matters decided against him).

Turning to the next *Cromer* factor, it is equally evident that Switzer's incessant litigation imposes significant costs on his opponents and this court. Since 2008, he has instituted twelve civil actions in this district and filed a motion in another, even though he was not a party. Every paper he files requires some attention both from the clerk and from either a magistrate judge or a district judge (or both). Every paper he serves on his opponents similarly requires their attention and that of their lawyers, and unlike litigation filed by counsel, Switzer's litigation poses a particular burden due to his poorly-crafted pleadings, which are difficult to answer and interpret, and his unreasonably active and aggressive motions practice, which sets him apart from other parties who file frivolous lawsuits in this court.

The fourth *Cromer* factor, inadequacy of alternative sanctions, also weighs heavily in favor of imposing the requested pre-filing injunction on Switzer. The state court's experience with Switzer's repeated attempts to relitigate settled custody and visitation issues, despite the imposition of a monetary sanction for litigating in bad faith, strongly suggests the inadequacy of

monetary sanctions. In this court, threats and warnings have proven inadequate. Switzer responded to this courts order to show cause why he should not be sanctioned for filing frivolous motions by filing three more frivolous motions. While this court has not fined Switzer for abusing the judicial process, there is no reason to believe that he, a person proceeding *in forma pauperis*, could pay any such fine.

For the same reason, the posting of a contempt bond at the outset of any litigation is not feasible. *See, e.g., Washington v. Alaimo*, 934 F. Supp. 1395 (S.D. Ga. 1996) (barring a prisoner from filing further lawsuits unless he paid both filing fee and a $1,500 contempt bond). Although this is a sensible approach when a vexatious litigant has the ability to post such a bond, it would effectively bar Switzer from the courthouse, given his lack of assets or funds.

In short, Switzer is an impecunious, kvetching malcontent with a long history of carrying-on frivolous and vexatious litigation. Absent the imposition of a pre-filing injunction, there is a very real and significant likelihood he will continue to abuse the judicial process and harass other parties. *Safir*, 792 F.2$^d$ at 94.

## C. Injunction Narrowly Tailored to Switzer's Misconduct

Even though Switzer's abusive and frivolous conduct merits a pre-filing injunction and the relevant *Cromer* factors weigh strongly in favor of such a determination, the court must ensure that the injunction is "narrowly tailored" to fit the specific circumstances at issue. *Thomas v. Fulton*, 2007 U.S. Dist. LEXIS 44516, *1 (WDNC. Jun. 18, 2007) (citing *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993*)*.

27

Therefore, a pre-filing injunction is appropriate and should be limited to *pro se* filings by Switzer in this district against Virginia state and local government entities, officials and employees, including but not limited to Page County officials and employee, and excluding only pro se *habeas corpus* petitions. [9]

## V. PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis and on the basis of a careful and thorough examination of the entire record, the undersigned submits the following formal findings, conclusions and recommendations:

1.  Switzer's complaint fails to contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face against Sheriff Thomas;

2.  Switzer's complaint fails to contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face against Nurse Weaver;

3.  Switzer's complaint fails to contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face against any other official or employee of the Page County Jail;

4.  Switzer's complaint fails to state a cognizable § 1983 claim based on "deliberate indifference to a serious medical need;"

5.  Switzer's complaint fails to state a cognizable § 1983 claim based on a "failure to protect;"

6.  Switzer's complaint fails to state a cognizable § 1983 claim based on the violation of any other Eighth Amendment protection;

---

[9] If Switzer is represented by an attorney, the court will be able to hold the attorney responsible for any frivolous or vexatious pleadings. See Fed. R. Civ. P. 11. Switzer has no history of filing vexatious habeas corpus petitions, and the court should be reluctant to restrict his access to the Great Writ. The state courts are independent from federal courts, and, as they have shown herein, they are capable of protecting themselves; moreover, Switzer has brought almost all of his suits against public officials in federal court and in particular in this district, and they are the individuals with whom Switzer is most likely to encounter and most likely to sue, as he has in the past. Thus, at least for now, an injunction limited to this judicial district and narrowly tailored to Switzer's litigation history should fit the circumstances of the case.

7. Switzer's complaint fails to state a cognizable § 1983 claim based on any equal protection denial;

8. Switzer's complaint fails generally to meet minimum pleading requirements;

9. Granting Switzer leave to amend his complaint would be an exercise in futility;

10. Switzer's motion for summary judgment is untimely and has no cognizable basis in law or logic either;

11. Switzer's numerous non-dispositive motions either are patently inapposite, untimely, premature or unwarranted by existing law or the applicable Federal Rules of Civil Procedure;

12. Exigent circumstances justify entry of a pre-filing order enjoining Switzer from filing any new civil action, motions, papers, or requests for relief in any civil actions in the Western District of Virginia in which any claim is asserted against any Virginia state or local government entities, officials and employees, including but not limited to Page County officials and employee, without seeking and obtaining a court order, excluding only pro se *habeas corpus* petitions;

13. Switzer has a long and egregious history of litigation, particularly ones where he has asserted claims that lack a good faith basis and are vexatious, harassing, and often duplicative;

14. Switzer has a long, egregious and vexatious history of abusive motion practices;

15. Switzer's vexatious and frivolous filings have placed considerable burdens on Court personnel as well as the defendants named in his cases;

16. Switzer's vexatious and frivolous filings have filings have also placed a similar burden on opposing counsel;

17. An alternative sanction to the proposed pre-filing injunction would be inadequate; and

18. Switzer's complaint should be dismissed with prejudice and without leave to amend.


## VI.    DIRECTIONS TO CLERK

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record and to the pro se plaintiff.

## VII.   NOTICE TO THE PARTIES

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

**DATED**: 25th day of February 2013.

/s/ *James G. Welsh*
United States Magistrate Judge